JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| **In re** | ) Case No.: CV 10-04933-CJC |
| **BROTMAN MEDICAL CENTER,** | ) |
| **INC.,** | ) |
| Debtor, | ) **ORDER AFFIRMING BANKRUPTCY COURT'S GRANTING OF APPELLEES' MOTION FOR SUMMARY JUDGMENT** |
| _____ | ) |
| **JACOB TERNER, ET AL.** | ) |
| Plaintiffs-appellees, | ) |
| | ) |
| **BROTMAN MEDICAL CENTER,** | ) |
| **INC., ET AL.** | ) |
| Defendants-appellants. | ) |

## I.    INTRODUCTION

The issue before the Court on appeal is whether the Bankruptcy Court erred in granting Appellees' motion for summary judgment.  Appellants contend that genuine

-1-

1    issues of material fact exist, specifically concerning whether (1) Appellant Prospect

2    Medical Systems, Inc. ("PMS") is the holder and owner of Claim 419, (2) Appellee Jacob

3    Terner ("Dr. Terner") transferred the promissory note at issue to PMS, and (3) equitable

4    subrogation should not be applied because Dr. Terner allegedly has unclean hands and

5    inequity would result.  Despite Appellants' arguments on appeal, the Bankruptcy Court

6    did not err in granting summary judgment.  The evidence in the record is insufficient to

7    dispute that Dr. Terner holds and owns Claim 419 and never transferred the promissory

8    note or Claim 419 to PMS.  Appellant has also failed to raise a genuine issue as to

9    whether the Bankruptcy Court correctly applied the doctrine of equitable subordination.

10   Accordingly, the Bankruptcy Court's decision is AFFIRMED.

11

12   **II.    UNDISPUTED BACKGROUND**

13

14        This appeal arises from a dispute as to the identity of the individual or entity that is

15   entitled to pursue claim 419 ("Claim 419") filed against Debtor and Appellant Brotman

16   Medical Center, Inc. ("Brotman").  The basis for Claim 419 is a subordinated promissory

17   note ("Note") executed on August 31, 2005 by Appellee Herta and Paul Amir Family

18   Trust ("AFT") and Brotman after AFT agreed to loan Brotman $1.5 million.  Excerpts of

19   Record ("ER") 15–17.  After execution of the Note, AFT wired the $1.5 million to

20   Brotman as promised.  ER 259, 477.  Following AFT's loan to Brotman, in September

21   2005, Prospect Medical Holdings ("PMH") acquired from Tenet Healthcare a 30% stake

22   in Brotman.  ER 258.

23

24        Dr. Terner has had significant involvement with both Brotman and the Prospect

25   Entities.[1]  Dr. Terner was a member of Brotman's Community Governing Board prior to

26   PMH's September 2005 acquisition of a stake in Brotman.  ER 258, 373 (Dr. Terner

27

28   [1] The Court collectively refers to Prospect Medical Systems, Inc., Prospect Medical Holdings, and
Prospect Medical Group, Inc. as the "Prospect Entities."

testifying in deposition that he resigned from Brotman's governing board "when it became apparent that a transaction [where PMH would acquire a stake in Brotman] was likely"). After PMH acquired its stake in Brotman, Dr. Terner became Chairman of Brotman's Board of Directors. ER 258. He was also CEO and a member of the Board of Directors of PMH as well as the sole shareholder of Prospect Medical Group, Inc. ("PMG") from September 1996 until May 2008. ER 258, 369.

An important motivation for the AFT loan to Brotman was that Dr. Terner, a close friend of the Amir family, solicited the loan. ER 258. Dr. Terner has represented—and it is undisputed on appeal—that he orally promised the Amir family that he would personally guarantee repayment of the loan. ER 258, 477; Reply at 1.

Brotman negotiated two extensions of the Note's maturity date and also made two payments reducing the Note's principal balance from $1.5 million to $1.15m. ER 477. Brotman stopped making interest or principal payments on the Note after March 2007. ER 52. In September 2007, Dr. Terner, through the J. Terner Family Trust, made a payment of $1,210,375.00 to AFT. ER 259, 278. This was the total amount due on the Note at that time.[2] Shortly thereafter, AFT executed a limited power of attorney granting Dr. Terner, in his individual capacity, the authority to act on behalf of AFT with respect to the sale, transfer, disposition, settlement, collection, or compromise of the Note. ER 259–60, 280.

Brotman filed for Chapter 11 bankruptcy on October 25, 2007. ER 478. Brotman's bankruptcy filings listed AFT as a creditor holding an unsecured nonpriority claim in the amount of $1,210,375.00. ER 148 (further indicating that the AFT claim

---

[2] Dr. Terner's payment was in the amount of unpaid interest and principal but did not cover default interest allowed under the Note. On appeal, the parties do not dispute the Bankruptcy Court's finding that it functioned as a payment of the total amount owed to AFT under the Note. *See* ER 478; Opening Br. at 6, 15; Opp'n Br. at 4.

1    was not in dispute, not contingent, and not liquidated).  Brotman's Second Amended

2    Disclosure Statement Describing Second Amended Chapter 11 Plan of Reorganization

3    Proposed by Brotman (dated November 3, 2008) also cited the AFT note as an unsecured

4    liability of "approximately $1.2 million."  ER 152.

5

6        In April 2008, Dr. Terner submitted a proof of claim, which was indexed as Claim

7    419, in the amount of $1,296,625.00—the amount paid by Dr. Terner plus default

8    interest.  ER 260, 282.  The Bankruptcy Court found, and Appellants do not contest on

9    appeal, that Dr. Terner filed the proof of claim on a pre-printed form ("Claim Form")

10    generated by Brotman.  ER 478; *see also* ER 260.  The Claim Form listed "PROSPECT

11    MEDICAL SYSTEMS" in the "Name of Creditor" blank.  ER 282, 478.  Dr. Terner

12    filled in additional information including that notices regarding the bankruptcy should be

13    sent to "Herta & Paul Amir Family Trust . . . c/o Jacob Y. Terner, M.D." at "Prospect

14    Medical Holdings, Inc."  ER 282.  Dr. Terner also attached a copy of the Note and the

15    limited power of attorney to the Claim Form.  ER 283–301.

16

17        As part of negotiations surrounding Brotman's Plan of Reorgnization, PMS agreed

18    to waive all of its claims against Brotman, purportedly including Claim 419.  ER 311–12.

19    Dr. Terner learned of the attempt by PMS to waive Claim 419 on or about January 9,

20    2009.  ER 478.

21

22        On March 13, 2009, Appellees filed an adversary complaint against Appellants

23    seeking declaratory relief concerning the parties' rights and obligations under the Note

24    and Claim 419.  ER 478.  On April 13, 2009, the Creditors' Committee intervened in the

25    adversary proceeding and the Brotman Creditor Trust (the "Creditor Trust") subsequently

26    became the intervening party.  ER 478.  The Creditor Trust, Brotman, and PMS filed

27    answers and counterclaims seeking a determination that Appellees had no interest in

28    Claim 419, that Claim 419 should be denied and invalidated, and that the Note had been

paid in full.  ER 478.  Thereafter, both Appellants and Appellees filed for summary judgment.

In an order dated June 11, 2010, the Bankruptcy Court granted summary judgment in favor of Appellees.  ER 463–64.  On July 8, 2010, the Bankruptcy Court issued its findings of fact and conclusions of law supporting its grant of Appellees' motion for summary judgment.  ER 476–80.  Finally, the Bankruptcy Court entered judgment on July 14, 2010.  ER 490–91.  The Appellants challenge these rulings on appeal.

The Bankruptcy Court made several findings of fact and conclusions of law relevant to this appeal.  Specifically, the Bankruptcy Court found that the Claim Form was pre-printed, generated by Brotman, and listed PMS as the creditor before Dr. Terner—who believed the Claim Form was a generic form—inputted additional information concerning the Note, AFT, and the amount owed.  ER 478.  The Bankruptcy Court determined that there was "no evidence that the Note was assigned [by Dr. Terner] to Prospect, either orally or in writing."  ER 478, 479.  The Bankruptcy Court further found that "[d]espite Prospect's attempt to waive the claims arising from the Note, no such claims, including Claim No. 419, have been waived or extinguished."  ER 478. Finally, the Bankruptcy Court's legal conclusions included that Claim 419 was "valid and enforceable," Dr. Terner could enforce the Note against Brotman under the doctrine of equitable subordination by virtue of his payment to AFT, and Appellants' unclean hands defense failed because there was "no evidence that Dr. Terner acted with unclean hands in connection with procuring the" loan from AFT.  ER 479.

## III.   ANALYSIS

A district court reviews a bankruptcy court's grant of summary judgment *de novo*. *Suncrest Healthcare Ctr. LLC v. Omega Healthcare Investors, Inc. (In re Raintree*

1   *Healthcare Corp.)*, 431 F.3d 685, 687 (9th Cir. 2005).  A bankruptcy court's grant of

2   summary judgment "may be affirmed on any ground supported by the record." *Ginger*

3   *Root Office Assocs., LLC v. Farmer (In re Advanced Packaging and Prods. Co.)*, 426

4   B.R. 806, 816 (C.D. Cal. 2010).

5

6       "Summary judgment is to be granted if the pleadings and supporting documents,

7   viewed in the light most favorable to the non-moving party, show that there is no genuine

8   issue as to a material fact and the moving party is entitled to judgment as a matter of

9   law." *In re Raintree Healthcare Corp.*, 431 F.3d at 687.  A fact issue is material when its

10  resolution "might affect the outcome of the suit under the governing law." *Anderson v.*

11  *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A disputed issue of material fact is

12  genuine "if the evidence is such that a reasonable jury could return a verdict for the

13  nonmoving party." *Id.*  The moving party bears the initial burden of demonstrating that

14  there are no genuine material issues.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986);

15  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.

16  1987).  Once this burden has been met, the party resisting the motion "must set forth

17  specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

18  The court does not make credibility determinations, nor does it weigh conflicting

19  evidence.  *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992).

20

21      Appellees have met their burden of demonstrating that there are no genuine

22  material issues.  The following facts are undisputed on appeal: (1) AFT and Brotman

23  executed the Note after AFT agreed to lend Brotman $1.5 million, (2) AFT did in fact

24  lend Brotman the $1.5 million, (3) the Note was valid and evidenced Brotman's

25  obligation to AFT—an obligation that Brotman further admitted to and documented in its

26  bankruptcy filings, (4) Dr. Terner personally guaranteed repayment of the Note in the

27  event that Brotman defaulted, (5) after Brotman stopped making payments on the Note,

28  Dr. Terner, acting through the J. Terner Family Trust, made a payment to AFT in the

amount of Brotman's obligation, (6) AFT executed a limited power of attorney granting Dr. Terner the authority to act on behalf of AFT with respect to the sale, transfer, disposition, settlement, collection, or compromise of the Note, and (7) Dr. Terner filed a proof of claim, which was indexed as Claim 419, against Brotman on the basis of the obligation underlying the Note.  These facts demonstrate that, once Dr. Terner had personally paid AFT the amount that Brotman owed AFT under the Note, AFT empowered Dr. Terner to pursue the obligation underlying the Note against Brotman. The Bankruptcy Court also held that the doctrine of equitable subordination permitted Dr. Terner to pursue Claim 419.  ER 479.  As Dr. Terner explained, his expectation at the time that he made the payment to AFT was that "Brotman either would make good on its obligation and pay [AFT], in which case [AFT] would return to me the funds I had paid or . . . Brotman would reimburse me directly."  ER 259.  That is why Dr. Terner filed Claim 419.

Nevertheless, Appellants assert that a genuine issue of material facts exists with respect to whether Dr. Terner thereafter transferred his interest in Claim 419 to PMS. This assertion is based on the listing of Prospect Entities on the Claim Form and a declaration stating that Dr. Terner allegedly said he had transferred the Note to PMS.  As explained below, Appellants have failed to provide any evidence or a credible argument that would explain why Dr. Terner would have taken the extraordinary measure of transferring his claim for more than $1.2 million to PMS for nothing in return. Appellants further contend that there are genuine issues of material fact concerning whether equitable subrogation should be applied to permit Dr. Terner to pursue Claim 419.  That unpersuasive contention is also addressed below.

//

//

//

**A.     Ownership of Claim 419**

Appellants first contend that the Bankruptcy Court erred by finding there was no genuine issue of material fact as to whether PMS, rather than Dr. Terner, properly held and owned Claim 419 based upon the references to PMS and PMH on the Claim Form. Principally, Appellants assert that the listing of PMS as the creditor on the Claim Form "provides more than sufficient evidence to create a genuine issue of material fact regarding ownership of" Claim 419.  Opening Br. at 10.  Appellants argue that Dr. Terner's decision to list his PMH address as his contact address on the Claim Form further supports their argument that PMS held and owned Claim 419.  Opening Br. at 11.

The facts Appellants cite do not give rise to a genuine dispute of fact.  While it is undisputed that PMS was listed as the creditor on the Claim Form, Dr. Terner provided uncontroverted evidence that the listing was a mistake.  When Brotman generated the pre-printed Claim Form, it designated PMS as the creditor.  Dr. Terner did not notice that PMS had already been designated as the creditor when he filled out the form, and he "did not consult with an attorney" that might have caught the error prior to submitting it.  ER 260.  In fact, he declared that he did not become aware that PMS was listed as the creditor until December 2008. ER 260.  Although Appellants assert that Dr. Terner's internal motivation or intent is an issue that implicates credibility and should not be determined on a motion for summary judgment, Appellants have thus far failed to contest Dr. Terner's explanation for the listing of PMS as creditor with any reliable evidence. *See T.W. Elec. Serv., Inc.*, 809 F.2d at 630 ("[T]he nonmoving party may not merely state that it will discredit the moving party's evidence at trial and proceed in the hope that something can be developed at trial in the way of evidence to support its claim.").

Moreover, the fact that Dr. Terner listed his business address at PMH in his contact information (which also references AFT) is irrelevant to the question of whether the

1  listing of PMS—not PMH—as the creditor on the Claim Form was a mistake.  It is also

2  easily explained: Dr. Terner was the CEO of PMH and presumably could reliably be

3  reached there at the time he submitted the Claim Form.

4

5      Second, Appellants argue that the Bankruptcy Court erred because there is a

6  genuine issue of material fact as to whether Dr. Terner utilized the limited power of

7  attorney granted by AFT to transfer the Note to PMS.  In support of this contention, the

8  Appellants rely on Mr. Sam Lee's declaration.  Mr. Lee declared that, in or about October

9  2007,[3] Dr. Terner told him "in the context of multiple conversations regarding various

10 general and financial issues involving Brotman" that Dr. Terner had transferred the Note

11 "to Prospect."  ER 404–05.

12

13     Mr. Lee's declaration also fails to give rise to a genuine issue.  As an initial matter,

14 and assuming his declaration is true, it would simply establish that Dr. Terner *told* Mr.

15 Lee that such a transfer had occurred, not that such a transfer did, in fact, occur.  It must

16 be noted that Mr. Lee's declaration is directly contradicted by Dr. Terner's declaration

17 stating that he did not transfer or "represent to anyone at Prospect, Brotman or elsewhere

18 that the Note or Claim No. 419 had been transferred to Prospect."  ER 261.  In any event,

19 when the entire record is considered, it is clear that the Bankruptcy Court correctly found

20 that no genuine issue exists.  Specifically, Appellants have failed to provide any evidence

21 or credible argument that would explain why Dr. Terner would have chosen to transfer a

22 claim potentially worth more than $1.2 million to PMS for nothing in return.  And, as

23 Appellees properly argue, Appellants have failed to produce any evidence whatsoever

24 documenting any oral or written negotiations, bargaining, agreement, or consideration for

25 such a transfer.  *See* Opp'n Br. at 15 (explaining that Appellants have "not produced a

26

27 _____

28 [3] At this time, Mr. Lee was a member of PMH's Board of Directors as well as CEO of Alta Hospitals
   System, LLC—an entity that merged with PMH.  ER 404.  Mr. Lee later became CEO of PMH.  ER
   404.

written assignment agreement or any other memorialization of the purported assignment – there are no notes, letters, or emails referencing the purported assignment"). Accordingly, on this record, the Bankruptcy Court correctly held that no reasonable jury could find that Dr. Terner transferred the Note or Claim 419 to PMS.

## B.    Equitable Subrogation

Finally, Appellants assert that the Bankruptcy Court erred in holding that the doctrine of equitable subrogation[4] applied because there were genuine material issues as to whether (1) Dr. Terner has unclean hands and (2) the application of equitable subrogation would cause injustice.  The Bankruptcy Court did not err in granting summary judgment in favor of the Appellees on these issues.

The basis for Appellants' unclean hands claim appears to be a theory that (1) Dr. Terner previously entered into a consent decree with the SEC restraining and enjoining him from directly or indirectly engaging certain fraudulent or deceptive activities, ER 395; (2) when PMH sought to acquire a stake in Brotman, the SEC limited PMH's investment to $1 million, ER 258; (3) an important lending institution required that Brotman have an additional $1.5 million in secured or subordinate equity before it would agree to the transaction whereby PMH would acquire a stake in Brotman, ER 258, 381; (4) Dr. Terner, wanting the transaction to proceed, successfully solicited AFT to lend the needed $1.5 million to Brotman; (5) Dr. Terner's solicitation and repayment guarantee essentially rendered AFT's loan a sham and operated as a direct investment that exceeded the $1 million limitation imposed by the SEC, Opening Br. at 18; and (6) therefore Dr. Terner's successful solicitation of AFT's loan was a "deliberate circumvention of the

---

[4] The doctrine of equitable subrogation "permits a party who has been required to satisfy a loss created by a third party's wrongful act to 'step into the shoes' of the loser and pursue recovery from the responsible wrongdoer." *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 21 Cal. App. 4th 1586, 1595–96 (1994).

1    limits placed by the SEC on the amount" of PMH's investment and a violation of his

2    consent decree with the SEC, Opening Br. at 16–20.  Based on this reasoning, Appellants

3    contend that there is a genuine issue as to whether Dr. Terner has unclean hands.

4

5          Appellants' allegations are entirely speculative and unsupported by the record.  To

6    the contrary, the evidence in the record is that the AFT loan was not a sham.  It is

7    undisputed that AFT made the loan directly to Brotman in August 2005 and was not

8    repaid by Dr. Terner until September 2007—two years later, and only after Brotman had

9    defaulted on its obligations.  The record substantially undermines other portions of

10   Appellants' theory as well.  For example, Appellants assert that Dr. Terner went "out of

11   his way to avoid creating a paper trail that might run him afoul with the SEC consent

12   order," Opening Br. at 12, yet the record actually reflects that Dr. Terner (1) made

13   payment by check from his family trust to AFT in the amount of Brotman's outstanding

14   obligation, (2) received a limited power of attorney from AFT in his individual capacity,

15   and (3) personally filed Claim 419, listing himself as the contact for notices related to the

16   claim.  Most importantly, as the Bankruptcy Court succinctly concluded, Dr. Terner's

17   conduct that allegedly ran afoul of the SEC's prohibitions is the SEC's concern and is

18   irrelevant to whether Dr. Terner had unclean hands in asking the Bankruptcy Court to

19   apply the doctrine of equitable subordination to permit him to pursue Claim 419 against

20   Brotman.  ER 447 (Bankruptcy Court explaining in summary judgment hearing that the

21   parties should "[l]et the SEC worry about [Dr. Terner's alleged violations].  But Brotman

22   got the money.  Brotman knows it got a loan.  Brotman signed a prom[issory] note.  Valid

23   obligation.").

24

25         Finally, Appellants contend that there is a genuine issue as to whether applying

26   equitable subrogation will "work a great injustice to Brotman's creditors," including

27   PMS.  Opening Br. at 20.  They argue that permitting Dr. Terner to pursue Claim 419

28   will decrease "all of the Class 4 general unsecured creditors' claims . . . by the amount of

Claim No. 419, which will decrease their anticipated dividends proportionately" and that this result "would be unfair" to those creditors in light of Dr. Terner's conduct.  In short, this contention is duplicative of Appellants' unclean hands claim.  It relies on the same alleged scheme and asserts that injustice will result if Dr. Terner may pursue Claim 419. As a result, this contention is similarly without support in the record and without merit. There is no genuine issue that permitting Dr. Tener, who personally made payment to AFT in the amount of Brotman's outstanding obligation, to pursue Claim 419 will cause injustice because Appellants have not, *inter alia*, plausibly argued that Dr. Terner transferred the Note or Claim 419 to PMS or received any consideration whatsoever that might have induced such a transfer.

## IV.   CONCLUSION

For the foregoing reasons, the Bankruptcy Court's decision granting summary judgment in favor of Appellees is AFFIRMED.

DATED:      January 7, 2011

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE